

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SHELBY A. COBB, §<br>PLAINTIFF, §<br>§<br>VS. §<br>§<br>NANCY A. BERRYHILL, §<br>ACTING COMMISIONER OF §<br>SOCIAL SECURITY, §<br>DEFENDANT. § | CIVIL ACTION NO. 4:17-CV-00106-A |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Shelby A. Cobb ("Cobb") filed this action pursuant to section 405(g) and 1383(c) of Title 42 of the United States Code for judicial review of the Commissioner of Social Security's final decision denying her claim for a period of disability and disability insurance benefits (DIB) under Title II the Social Security Act ("SSA"). In December 2013, Cobb filed an application for DIB, alleging her disability began on April 19, 2011. (Transcript ("Tr.") 14, 131-34.) Cobb later amended her onset date to November 26, 2013. (Tr. 14, 235.) After her application was denied both initially and on reconsideration, Cobb requested a hearing before an administrative law judge ("ALJ"). (Tr. 14, 79-83, 87-92.) The

1

ALJ held a hearing on July 2, 2015, and issued an unfavorable decision on August 14, 2015. Thereafter, on December 14, 2016, the Appeals Council denied Cobb's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-5.) Cobb subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* of the SSA and numerous regulatory provisions govern disability insurance benefits. *See* 20 C.F.R. Pt. 404. Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 404.1572. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing. 20 C.F.R. Pt. 404 Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found based on the

claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 404.1520(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* § 404.1520(g); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Circ. 1999).[1] At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. § 404.1520(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

3

evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.  ISSUES

In her brief, Cobb presents the following issues:

1. Whether the ALJ erred when he failed to have a qualified psychologist or psychiatrist review the medical evidence, as required by the "special technique" for evaluating mental impairments; and

2. Whether the mental residual functional capacity ("RFC") determination limiting Cobb to carrying out "detailed, but not complex, instructions" and able to "attend and concentrate for extended periods" incorporates the ALJ's finding that Cobb has moderate difficulties in concentration, persistence, and pace.

(Plaintiff's Brief ("Pl.'s Br.") at 5-12.)

### IV.  ALJ DECISION

In his August 14, 2015 decision, the ALJ concluded that Cobb was not disabled within the meaning of the SSA. (Tr. 25.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above. (Tr. 16-25.) At Step One, the ALJ found that Cobb had not engaged in substantial gainful activity since November 26, 2013, the alleged amended onset of disability date. (Tr. 17.) At Step Two, the ALJ held that Cobb had the following severe impairments: (1) congestive heart failure, (2) polymorphic ventricular tachycardia/torsades de pointes arrest, (3) obesity, and (4) depressive disorder. (Tr. 17.) At Step Three, the ALJ found that Cobb did not have an impairment or combination of

4

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18.) In his analysis, the ALJ, *inter alia*, stated:

> The severity of the claimant's mental impairments does not meet or medically equal the criteria of listing 12.04. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction. She is able to care for her personal needs, do household chores, prepare meals, grocery shop using an electric cart, drive, and attend church services. In social functioning, the claimant has moderate difficulties due to anger, irritability, and lashing out. In her function report, she described difficulty getting along with others due to her symptoms but she testified that her symptoms have improved with sertraline. With regards to concentration, persistence, or pace the claimant has moderate difficulties. She does not allege that depression affects her memory, attention, concentration, understanding, or ability to follow instructions but she did report needing reminders to take her medication. As for episodes of decompensation, the claimant has experienced no episodes of decompensation of extended duration. She has not been hospitalized due to a mental impairment or experienced a temporary increase in signs or symptoms accompanied by loss of adaptive functioning.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the

sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(Tr. 18-19 (internal citations omitted).)

As to Cobb's RFC, the ALJ stated:

The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can sit or stand at her option; cannot climb, crawl, kneel, or squat; can occasionally stoop and crouch; cannot work with the general public; can have only superficial contact with coworkers and supervisors; and can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting. Sit/stand option means the ability to sit and/or stand for a total of 8 hours in an 8-hour day. The individual has the choice of changing positions at will and performing the job in either position. The claimant retained the ability to perform said residual functional capacity on a regular and continuing basis. (SSR 96-8p).

(Tr. 19 (emphasis omitted).) Based on this RFC, the ALJ, at Step Four, found that Cobb was unable to perform her past relevant work. (Tr. 23.) However, at the Fifth Step, the ALJ found that jobs existed in significant numbers in the national economy that Cobb could perform. (Tr. 24-25.) Based on this determination, the ALJ concluded that Cobb was not disabled. (Tr. 25.)

## V. DISCUSSION

### A. Special Technique and Qualified Psychologist or Psychiatrist Opinion

In her brief, Cobb argues that the ALJ erred by failing to have either a qualified psychologist or psychiatrist review the medical evidence, as required by the "special technique" for evaluating mental impairments, even though a State Agency physician reviewed Cobb's *medical* conditions." (Pl's Br. at 5.) Specifically, Cobb argues that the

6

"regulations unambiguously and absolutely require that[,] in cases involving evidence of a mental impairment, the Agency will have a qualified psychiatrist or psychologist review the record evidence and offer an opinion as to the practical effects of the claimant's mental impairments (RFC)." (Pl.'s Br. at 6.) Cobb claims that this "development of the record is part of the 'special technique' for the evaluation of mental impairments set forth in the regulations which [sic] *expert assessment* of the claimant's mental limitations both with respect to the four general functional areas assessed at step 3 (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation), and assessment of the claimant's mental RFC." (Pl.'s Br. at 6.)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a.[2] In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and

---

[2] The Court notes that several of the regulations and applicable SSRs governing social security cases were recently amended or rescinded, including some relating to the "special technique." *See, e.g.*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016). These new rules generally apply to claims filed either on or after January 17, 2017 or March 27, 2017, depending on the regulation. *Id.* In addition, the Court is generally to apply those rules that were in effect at the time the ALJ issued their decision. *See, e.g.*, 81 Fed. Reg. 66138-01, fn.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.") Thus, any cites (unless otherwise noted) will be to the old rules that are applicable to claims, such as this one, that were filed and decided by the Commissioner prior to 2017.

sometimes C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c).[3] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[4] and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[5] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

In this case, there is no question that the ALJ applied the special technique in analyzing Cobb's mental impairments, as set forth above. (Tr. 18-23.) Cobb, however, argues that the ALJ erred in performing the special technique because he failed to have a qualified psychiatrist or psychologist review the record evidence and offer an opinion as to the practical effects of the claimant's mental impairments. (Pl's Br. at 6.) Cobb cites to, *inter alia*, the following in support of this argument: (1) 20 C.F.R. § 404.1503(e),[6] (2) Social

---

[3] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[4] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[5] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[6] 20 CFR § 404.1503(e) states:

An initial determination by a State agency or the Social Security Administration that you are not disabled (or a Social Security Administration review of a State agency's initial determination), in any case where there is evidence which indicates the existence of a mental impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any application residual functional capacity assessment.

8

Security Ruling ("SSR") 96-6P,[7] (3) 42 U.S.C. § 421(h),[8] (4) SSA Program Operations Manual system ("POMS") DI 24515.056,[9] and (5) 60 Fed. Reg. 20023, 20025 (1995) (wherein, according to Cobb, "the agency, in announcing the then new rule, confirmed its own policy that adjudicators 'must' obtain such an opinion from a medical consultant in any case involving a mental impairment"). (Pl.'s Br. at 6-7.)

After reviewing Cobb's contentions, the Court finds that they are misplaced. To begin with SSR 96-6P and POMS DI 24515.056(E)(2) deal with the requirement of expert opinion evidence when an ALJ determines that an individual's impairments are not equivalent to any Listing. *See, e.g., Bliss v. Colvin*, No. 6:14-CV-016-C, 2015 WL 3507892, at *4-5 (June 2, 2015); *Ford v. Astrue*, No. H-09-00225, 2010 WL 786917, at *8 (S.D. Tex. Mar. 8, 2010). Medical equivalence, however, was not an issue raised by Cobb in this case.

In addition, the statutory and regulatory directives found at § 42 U.S.C. § 421(h) and 20 C.F.R. § 404.1503(e) are inapplicable at the ALJ level as such directives only apply to an "initial determination." *See Martinez v. Comm'r of Soc. Sec.*, No. 1:15-CV-289-RHW, 2017

---

[7] SSR 96-6P states, "[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR96-6P. 1996 WL 374180, at *3 (S.S.A. July 2, 1996) (rescinded by SSR 17-2P, 2017 WL 3928306 (S.S.A. Mar. 27, 2017).

[8] 42 U.S.C. § 421(h) states:

> An initial determination under subsection (a), (c), (g), or (i) shall not be made until the Commissioner of Social Security has made very reasonable effort to ensure—
>
> (1) In any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment[.]

[9] POMS DI 24515.056(E)(2), which deals with "Responsibility for Establishing Medical Equivalence," states, "The law requires that reasonable efforts be made to have a qualified psychiatrist or psychologist review of [sic] unfavorable decisions involving mental disorders."

WL 738496, at *2 (S.D. Tex. Feb. 24, 2017); *McKinney v. Colvin*, No. 3:13-CV-900-HTW-LRA, 2014 WL 652948, at *2 (S.D. Miss. Feb. 19, 2014) ("[A] plain reading of the regulation in its entirety reflects that an ALJ is not subject at the hearing level to the purview of 421(h), and therefore not required to 'employ the assistance of a qualified psychiatrist or psychologist in making an *initial* determination of a mental impairment.'") The ALJ has greater flexibility than prescribed in 42 U.S.C. § 421(h) and 20 C.F.R. 404.1503(e) when assessing a claimant's mental condition and limitations than the individual that performs the initial determination and has a duty to consider all evidence of impairments in the record. *Martinez*, 2017 WL 738496, at *2. "The state agency's decision not to obtain the opinion of a psychologist or psychiatrist at the initial determination states does not constitute a reversible error by the ALJ." *Id.*

Finally, the federal regulation cited by Cobb is an outdated change made in 1995 and deals with testing modifications to the disability determination procedures, which is not relevant here. Because the evidence indicates that the ALJ properly followed the special technique in analyzing Cobb's mental impairments, remand is not required.

To the extent that Cobb contends the ALJ should have ordered a consultative mental health examination at the hearing level, the Court disagrees as the ALJ's duty to obtain a consultative examination is triggered when the evidence is insufficient to make an informed decision. *See* 20 C.F.R. §§ 404.1512(e), 404.1517, 404.1519a; *see also Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). In this case, the record was sufficient for the ALJ to make a decision without obtaining a consultative examination.

B. **Mental RFC Determination**

Next, Cobb argues that the ALJ erred in finding, during the paragraph B analysis under the "special technique," that Cobb had, *inter alia*, moderate difficulties with concentration, persistence, or pace but then finding in the RFC determination that Cobb could understand, remember, and carry out detailed but not complex instructions and "attend and concentrate for extended periods." (Tr. 19; Pl.'s Br. at 10-12.)

The paragraph B criteria limitations of having moderate limitations in activities of social functioning, and maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Cobb's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* These functions including the consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6. "While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the facts in this case, the ALJ's mental RFC determination limiting Cobb to the performance of understanding, remembering, and carrying out detailed but not complex instructions and attend and concentrate for extended periods is not contradictory with the ALJ's finding in the "special technique" that Cobb was moderately limited in her ability to maintain concentration, persistence, or pace. (Tr. 18, 24.) It is clear that the ALJ recognized in his decision that he was required to evaluate Cobb's mental impairments pursuant to the "special technique" set forth in the regulations as he made such an evaluation. (Tr. 19-23.)

In his decision, the ALJ found at Step Two that Cobb did have the severe impairment of, *inter alia*, depressive disorder. (Tr. 17.) Accordingly, at Step Three, the ALJ discussed at length Cobb's mental impairment as it pertained to "paragraph B." (Tr. 18-19.) There, he found that Cobb's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. Thus, the ALJ held that the "paragraph B" criteria were not satisfied. (*Id.*).

The ALJ then incorporated Cobb's functional limitations of having moderate deficits in concentration, persistence, and pace into limitations in the RFC such that Cobb was limited to understanding, remembering and carrying out detailed but not complex instructions and attending and concentrating for extended periods. (Tr. 18-23.) Similar findings have been upheld in numerous other courts.[10] In this case, the ALJ properly discussed the evidence in

---

[10] *See, e.g., Williams v. Colvin*, No. 4:14-CV-114-BJ, 2015 WL 1288348, at *6 (Mar. 20, 2015) ("Based on the facts in this case, the ALJ's mental RFC determination limiting [claimant] to the performance of detailed but not complex work is not contradictory with the ALJ's finding in the 'special technique' that [claimant] was moderately limited in her ability to maintain concentration, persistence, or pace."); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-16 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is

the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's evaluation of Cobb's mental impairments as well as the mental RFC assessment, remand is not required.

## RECOMMENDATION

It is recommended that the ALJ's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is

---

not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions). *But see Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) ("The Court finds the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or pace was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above the specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 13, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendations. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 29, 2017.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE